UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KELVIN FRAZIER,

    Plaintiff,

vs.

                        Case No. 3:14-cv-771-J-39JBT

FLORIDA DEPARTMENT
OF CORRECTIONS,

    Defendant.

**<u>ORDER</u>**

**I. Status**

Plaintiff is an inmate confined in the Florida penal system. He initiated the case, pro se, by filing a Complaint (Doc. 2) in the Circuit Court of the Eighth Judicial Circuit, in and for Bradford County, Florida on March 12, 2014. Defendants removed the case to this Court. <u>See</u> Notice of Removal (Doc. 1). Plaintiff is represented by counsel and is proceeding on the Amended Complaint of Kelvin Frazier (Amended Complaint) (Doc. 45) pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc (RLUIPA).

This cause is before the Court on Defendant's Motion for Summary Judgment (Motion) (Doc. 63). Plaintiff responded. <u>See</u> Summary Judgment Notice (Doc. 64); Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Response) (Doc. 72); Plaintiff's Notice of Filing Documents in Support of Its Response to Defendant's Summary Judgment Motion (Notice) (Doc.

73).[1]  Defendant filed a Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Reply) (Doc. 84).

## II. Summary Judgment Standard

"Summary judgment is appropriate only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).  "If the moving party meets this burden, 'the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor.'" Ekokotu v. Federal Exp. Corp., 408 F. App'x 331, 333 (11th Cir.) (per curiam) (quoting Fickling v. United States, 507 F.3d 1302, 1304 (11th Cir. 2007)), cert. denied, 565 U.S. 944 (2011).

Defendant contends that the Amended Complaint should be dismissed as Plaintiff's claims are now moot.  Motion at 1, 7-8.  Also, to the extent that Plaintiff is now making an argument that he has a problem with his kosher diet, Defendant asserts that Plaintiff has failed to exhaust administrative remedies.  Id. at 8 n.4.  Plaintiff counters that summary judgment is improper because he has not been provided "with healthy kosher meals."  Response at 7.  Plaintiff contends the case is not moot because "Defendant's

---

[1] Plaintiff also filed a Request for Oral Argument on Defendant's Motion for Summary Judgment (Doc. 74); however, the Court declines to hold oral argument as a decision can appropriately be rendered on the documents before the Court.

2

unwillingness to provide a healthy, balanced kosher meal demonstrates its lack of conviction to the kosher program and along with the timing of the decision to provide Plaintiff kosher meals (years after this action was filed), further demonstrates the Court should not determine the case is moot." Id. at 7-8. Plaintiff submits that his argument for the provision of healthy meals is not a new claim because his "right to a healthy meal is part and parcel of and implicit in the right to a kosher meal." Id. at 7 n.2.

### III. The Amended Complaint

At the time of the filing of the Amended Complaint Plaintiff was confined at Florida State Prison West (FSP).[2] Amended Complaint at 1. He practices the Jewish faith, and keeping kosher in his dietary needs is a key component of the practice of his faith. Id. Plaintiff alleges that despite numerous attempts to obtain kosher meals, he has been unable to do so over the years. Id. Plaintiff recognizes, however, that since the filing of his original Complaint, the United States District Court for the Southern District of Florida (S.D. Fla.), in United States v. Sec'y, Fla. Dep't of Corr., et al., Case No. 1:12-cv-22958-PAS, entered a Final Judgment and Permanent Injunction (Judgment) (Doc.

---

[2] Of note, Plaintiff is currently confined at Mayo Correctional Institution-Annex (MCI), which is located in the Northern District of Florida.

548) regarding an institution-wide kosher meal program.[3] Amended Complaint at 1-2.

Plaintiff states that he was provisionally approved for kosher meals back in April 2013, but he was required to complete a 90-day sincerity test (now discontinued). Id. at 2. Before he could complete the 90-day test, he was transferred to a different institution within the Florida Department of Corrections (FDOC). Id. Plaintiff states that frequent transfers and changing rules impeded his ability to obtain kosher meals since 2013. Id.

Plaintiff alleges that despite his sincere religious basis for keeping kosher, the FDOC forced Plaintiff to violate his beliefs in violation of RLUIPA. Id. He contends that the FDOC's refusal to accommodate this central tenet of Judaism substantially burdens the exercise of Plaintiff's religious right to practice his faith. Id. Plaintiff claims that the FDOC's refusal to provide kosher meals and/or practice of constantly moving Plaintiff and changing program requirements was done with the intent to violate RLUIPA or in reckless disregard to Plaintiff's religious practice. Id. Plaintiff asserts that the FDOC continues to deny him a kosher diet, and the frequently changing rules make it practically

---

[3] The Court takes judicial notice of United States v. Sec'y, Fla. Dep't of Corr., et al., Case No. 1:12-cv-22958-PAS (S.D. Fla.). The S.D. Fla. entered the Judgment (Doc. 548) on August 12, 2015.

impossible for him to comply with the new application procedures. Id.

Based upon these allegations, Plaintiff raises a First Amendment claim and also a claim for violation of RLUIPA. Id. at 4. In support, he states that the FDOC's dietary policies are not necessary to achieve any compelling state interest. Id. Plaintiff contends that he has a sincere religious basis for keeping kosher. Id. at 5. He notes that the S.D. Fla. has ordered FDOC to provide a system-wide kosher diet. Id. Plaintiff states that despite this order, the FDOC continues to deny a kosher diet to Plaintiff "under the pretext that he has not applied for one, or for other, unknown but improper reasons." Id. at 7. In conclusion, Plaintiff says he "just needs to be placed on a kosher food plan." Id.

### IV. Claims for Relief

In his first claim for relief, Plaintiff claims Defendant's refusal to provide kosher meals to Plaintiff violates RLUIPA. Amended Compliant at 8. In support of this claim, he states that he has been denied kosher meals from 2013 to present. Id. He explains that the FDOC currently denies Plaintiff a kosher diet despite his sincere religious beliefs requiring he keep kosher. Id. Plaintiff asserts that Defendant's failure to provide a kosher diet substantially burdens Plaintiff's free exercise of religion without a compelling reason to do so. Id. He contends that this

failure does not further a compelling governmental interest, and is not the least restrictive means to do so.  Id.

In his second claim for relief, Plaintiff claims the Defendant's policy of refusing to provide Plaintiff with kosher meals violates Plaintiff's First Amendment right to practice Judaism.  Id.

As relief, Plaintiff seeks declaratory relief that the Defendant violated RLUIPA "by failing to offer kosher meals to inmates in their custody who desire a kosher diet to exercise their religious beliefs[,]" and the Defendant violated section 1983 "by violating Frazier's right to practice his religion by denying him kosher meals[.]"  Id. at 9.  Plaintiff also seeks injunctive relief ordering Defendant "to provide nutritionally sufficient kosher meals to Frazier[.]"  Id.  Finally, Plaintiff asks for "such other relief as the interests of justice may require."  Id.

### V. Exhaustion of Administrative Remedies

Title 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." Thus, the Prison Litigation Reform Act (PLRA) requires exhaustion of available administrative remedies before an action with respect to prison conditions by a prisoner may be initiated in this Court.

Defendant moves to dismiss the Amended Complaint pursuant to 42 U.S.C. § 1997e(a). The Defendant asserts that Plaintiff failed to properly avail himself of the grievance process with regard to his claim that the kosher meals being served are not nutritionally adequate or a problematic. Motion at 8 n.4.

In this instance, Defendant bears the burden of proving a failure to exhaust available administrative remedies. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008), relying on Jones v. Bock, 549 U.S. 199 (2007). Guidelines are provided for reviewing a prisoner civil rights action for exhaustion compliance:

> Before a prisoner may bring a prison-conditions suit under § 1983, the Prison Litigation Reform Act of 1995 requires that he exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); see also Booth v. Churner, 532 U.S. 731, 736, 121 S.Ct. 1819, 1822, 149 L.Ed.2d 958 (2001). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006) (quotation omitted). To properly exhaust, a prisoner must "[c]ompl[y] with prison grievance procedures." Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 922–23, 166 L.Ed.2d 798 (2007).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1208 (11th Cir. 2015).

A number of factors guide the Court. Initially, the Court recognizes that exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory

7

under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir.), cert. denied, 555 U.S. 1074 (2008); Jones, 549 U.S. at 211; Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted). The Supreme Court has stated that "failure to exhaust is an affirmative defense under the PLRA[.]" Jones, 549 U.S. at 216. Although, "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory under the PLRA[;]" therefore, "unexhausted claims cannot be brought." Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citation omitted).

As recognized by this Court,

> "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)).
>
> In Ross,[4] the Supreme Court identified three circumstances in which administrative remedies would be considered unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." 136 S. Ct. at 1859. Second, "an administrative scheme might be so

---

[4] Ross v. Blake, 136 S.Ct. 1850 (2016).

8

> opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." <u>Id</u>. Third, an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Id</u>. at 1860.

<u>Davis v. Sec'y, Dept. of Corr.</u>, No. 3:15-CV-649-J-34JRK, 2017 WL 1885366, at *3-4 (M.D. Fla. May 9, 2017).

Thus, the relevant question before this Court is whether Plaintiff properly exhausted available administrative remedies prior to seeking judicial relief. To construe the exhaustion requirement otherwise would render the PLRA "a toothless scheme." <u>Woodford</u>, 548 U.S. at 95.

Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." <u>Woodford</u>, 548 U.S at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. **Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."** <u>Pozo</u>,[5] 286 F.3d, at 1024. . . .

---

[5] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 949 (2002).

Id. at 90 (emphasis added). In fact, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id. The Court must now make findings on the disputed issues of fact to decide whether administrative remedies were available to Plaintiff, and if so, whether he properly exhausted his administrative remedies.[6]

The FDOC provides an internal grievance procedure. See Chapter 33-103, Florida Administrative Code (F.A.C.). If the matter was grieved and the documents complied with the deadlines and other procedural rules as set forth in the F.A.C., the issues raised therein are exhausted.

Generally, the FDOC provides a three-step grievance procedure.

> In Florida, the grievance process consists of a three-step procedure. An inmate must first file an "informal grievance ... to the staff member who is responsible in the particular area of the problem." Fla. Admin. Code Ann. § 33-103.005(1). The second step requires the inmate file a formal grievance with the warden. Id. § 33-103.006(1)(a). If the inmate is unsuccessful at this point, he may submit an appeal to the Secretary of the DOC. Id. § 33-103.007.

Kozuh v. Nichols, 185 F. App'x 874, 877 (11th Cir. 2006) (per curiam), cert. denied, 549 U.S. 1222 (2007).

---

[6] Since the parties have not requested an evidentiary hearing on this issue and they have submitted evidence for the Court's consideration, the Court proceeds to resolve the material questions of fact based on the documents before the Court. Bryant, 530 F.3d 1377 n.16 (recognizing that a district court may resolve material questions of fact on the submitted papers when addressing the PLRA's exhaustion of remedies requirement).

Of initial significance, if Plaintiff filed a grievance and attempted to exhaust his administrative remedies, he would have needed to submit an initial grievance with the appropriate staff, a formal grievance with the warden, and then an appeal to the Secretary to properly grieve the matter in compliance with the procedural requirements of the administrative grievance process.

As noted by the Defendant, Plaintiff could not have exhausted his administrative remedies with regard to the Kosher Diet because the Kosher Diet currently in existence was not in place. Reply at 7. The Kosher Diet currently offered by the prison system is now offered at all facilities run by the Defendant. Motion at 4. On February 9, 2017, at the request of Plaintiff's attorney, Defendant placed Plaintiff on the Kosher Diet. Id. at 5. Plaintiff received the Kosher Diet from February 19, 2017 through February 23, 2017. Id. Plaintiff voluntarily withdrew from the Kosher diet on February 23, 2017. Id.

The Declaration of Barrow Beauchamp, the Religious Diet Program Coordinator for the FDOC, shows the following. The General Counsel's Office for FDOC approved Plaintiff's placement in the Religious Diet Program (RDP), without requiring Plaintiff to apply for the program. Exhibit A (Doc. 63-1 at 2). Plaintiff began receiving religious meals on February 19, 2017 at MCI. Id. at 2-3. Thereafter, Plaintiff filled out an inmate request stating that he wished to voluntarily withdraw from the RDP. Id. at 3. The

11

Chaplain accepted Plaintiff's voluntary withdrawal from the program and removed him from the RDP. Id.

Given these facts, Plaintiff did not exhaust his administrative remedies with regard to the nutritional value and adequacy of the meals adopted for the Kosher Diet prior to seeking judicial relief.[7] As such, there was not proper exhaustion. Therefore, Plaintiff has not demonstrated that he has exhausted his administrative remedies at MCI with respect to his claims concerning the nutritional value and adequacy of the Kosher Diet provided to him in 2017.

Upon review, the Court finds that the administrative process was available to Plaintiff; it did not operate as a simple dead end, it was clearly capable of use, and prison administrators did not thwart the use of the process through machination,

---

[7] In Case No. 1:12-cv-22958-PAS, the S.D. Fla. explained that the RDP consists of three options: (1) the previously-offered alternate, non-meat entree from the mainline; (2) the previously-offered vegan meal option; and (3) the newly-offered Certified Food Option (CFO), a kosher food option. Order on Motion for Summary Judgment (Doc. 498 at 5, S.D. Fla.). The S.D. Fla. noted that originally, the CFO consisted of pre-packaged processed foods and included two hot meals per day. Id. at 5 n.6. The S.D. Fla. recognized that the CFO was substantially modified to consist of all cold meals, and this switch to all cold meals apparently took place "in late summer 2014." Id. Of import, Plaintiff filed his case in the spring of 2014, prior to this institution-wide switch. The CFO cold meals are comprised of (1) breakfast: peanut butter, cold cereal and bread; (2) lunch and dinner: sardines, cabbage, beans, carrots, peanut butter, bread or crackers, and occasional fruit. Id. Also of import, the kosher meals are estimated to be more costly than mainline meals ($3.554 per prisoner per day, compared to approximately $1.888 per prisoner per day). Id. at 10.

misrepresentation, or intimidation. Based on all reasonable inferences, Plaintiff had access to the grievance process at MCI.

An inmate plaintiff is required to exhaust available administrative remedies. 42 U.S.C. § 1997e(a). Plaintiff did not properly exhaust his administrative remedies with regard to his claim that the Kosher Diet provided at MCI is not nutritionally sound or healthy or is in some other way inadequate or substandard.

In light of the above, Plaintiff failed to exhaust his administrative remedies before filing a lawsuit to seek judicial redress. Therefore, the Court concludes that the Motion should be granted for Plaintiff's failure to exhaust his administrative remedies against the Defendant with regard to the adequacy and nutritional value of the Kosher Diet of the RDP. Simply put, exhaustion of available administrative remedies is required before an action with respect to prison conditions by a prisoner may be initiated, and Plaintiff failed to avail himself of this process.

### VI. Mootness

"To plead a valid free exercise claim, [Plaintiff] must allege that the government has impermissibly burdened one of his 'sincerely held religious beliefs.'" Watts v. Florida Int'l Univ., 495 F.3d 1289, 1294 (11th Cir. 2007) (quoting Frazee v. Ill. Dep't of Emp't Sec'y, 489 U.S. 829, 834 (1989)). "A [prison] should accommodate an inmate's religious dietary restrictions, subject to

budgetary and logistical limitations, but only when the belief is "truly held.'" Hatchcock v. Cohen, 287 F. App'x 793, 801 (11th Cir. 2008) (per curiam) (quoting Martinelli v. Dugger, 817 F.2d 1499, 1504-06, 1508 (11th Cir. 1987)).  "'[P]rison regulations alleged to infringe constitutional rights are judged under a reasonableness test'—not the more stringent least restrictive means test. . . ." Muhammad v. Sapp, 388 F. App'x 892, 898 (11th Cir. 2010) (internal quotation omitted) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, (1987) (explaining that this test ensures that courts afford appropriate deference to prison officials)).

Plaintiff, an inmate confined in the FDOC, is provided with the heightened statutory protection to religious exercise under RLUIPA.[8]  Section 3 of RLUIPA provides:  "'[n]o government shall impose a substantial burden on the religious exercise' of an institutionalized person unless, as in RFRA, the government demonstrates that the burden 'is in furtherance of a compelling governmental interest' and 'is the least restrictive means of furthering' that interest. § 2000cc–1(a); cf. §§ 2000bb–1(a), (b)." Sossamon v. Texas, 131 S.Ct. 1651, 1656 (2011).

---

[8] In City of Boerne v. Flores, 521 U.S. 507, 532-33 (1997), the United States Supreme Court found the Religious Freedom Restoration Act (RFRA) to be unconstitutional as applied to state and local governments because it exceeded Congress' power under section 5 of the Fourteenth Amendment.  Institutionalized persons can sue pursuant to the RLUIPA, which preserves the compelling governmental interest/least restrictive means test but avoids the pitfalls of RFRA.

14

The Eleventh Circuit explains:

> Section 3(a) of RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). More expansive than prisoners' rights under the First Amendment, RLUIPA "affords to prison inmates a heightened protection from government-imposed burdens, by requiring that the government demonstrate that the substantial burden on the prisoner's religious exercise is justified by a compelling, rather than merely a legitimate, governmental interest." Smith v. Allen, 502 F.3d 1255, 1266 (11th Cir. 2007) (internal quotation marks omitted), abrogated on other grounds by Sossamon v. Texas, --- U.S. ----, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011). Thus, if Gardner's RLUIPA rights were not violated, neither were his First Amendment rights.
>
> "To establish a prima facie case under section 3 of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened." Smith, 502 F.3d at 1276. "The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion." Sossamon v. Lone Star State of Texas, 560 F.3d 316, 332 (5th Cir. 2009). "Although RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion, ... the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." Cutter, 544 U.S. at 725 n. 13, 125 S.Ct. 2113.

Gardner v. Riska, 444 F. App'x 353, 354-55 (11th Cir. 2011) (per curiam).

Thus, the inmate must demonstrate (1) that he engaged in a religious exercise, and (2) that the religious exercise was substantially burdened. Smith v. Allen, 502 F.3d 1255, 1276 (11th Cir. 2007), abrogated on other grounds by Sossamon, 563 U.S. 277 (2011); Knight v. Thompson, 797 F.3d 934, 942-43 (11th Cir. 2015) (recognizing that the Act broadly defines religious exercise), cert. denied, 136 S.Ct. 1824 (2016). The Court may consider the sincerity of the inmate's beliefs and inquire as to whether the prisoner's religiosity is authentic. Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005). Once sincerity is addressed, the defendant must demonstrate that the imposition of the burden or refusal to accommodate a sincere belief furthers a compelling government interest by the least restrictive means. Benning v. Georgia, 845 F.Supp.2d 1372, 1377 (M.D. Ga. 2012).

In the Amended Complaint, Plaintiff is seeking declaratory/injunctive relief. Defendant submits that Plaintiff's claims are moot due to all of the changes that have transpired since the filing of the original Complaint. Upon review, there is no longer a live controversy with respect to which this Court can give meaningful relief. Of paramount importance,

> "Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case; it is not enough that there may have been a live case or controversy when the case was filed." Id. (citation and internal quotations omitted). "The doctrine of mootness provides that the requisite personal interest that must

> exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Id. (citations, alterations, and internal quotations omitted).

KH Outdoor, L.L.C. v. Clay Cty., Fla., 482 F.3d 1299, 1302 (11th Cir. 2007).

Since the filing of the case, the FDOC adopted a new institution-wide Kosher Diet plan, implemented in its current form after a federal court's admonition to adopt a system-wide plan under strict parameters. Pursuant to the Judgment in Case No. 1:12-cv-22958-PAS (Doc. 548, S.D. Fla), the FDOC is required to offer a kosher diet to all prisoners with a sincere religious basis for keeping kosher. Kosher Diet is defined in the Judgment. Also, the Judgment sets forth requirements for audits, monitoring, and inspections of FDOC facilities to ensure compliance.

Since the filing of the Complaint, Plaintiff was added to the RDP list at MCI and received kosher meals until he elected to voluntarily withdraw from the RDP program. Plaintiff received the relief he requested; the FDOC placed him on the kosher food plan. Therefore, the Amended Complaint is due to be dismissed as his claim to be placed on the food plan is moot.[9]

Plaintiff, more recently, raised the issue that the meals provided to him in 2017 under the RDP were deficient, not well-balanced, and were without sufficient nutritional value to preserve

---

[9] There is no factual dispute that Plaintiff voluntarily withdrew from the RDP meal plan.

his health.  Notice, Plaintiff's Exhibit A, Declaration Under Penalty of Perjury (Doc. 73-1 at 2).  More specifically, he complains that the Kosher Diet adopted by the FDOC does not contain sufficient vitamins, minerals and proteins.  Id. at 4.  He explains that under the current Kosher Diet, inmates are served cold food seven days a week, 365 days a year, and he does not want the RDP/CFO approved kosher meals because they are unappetizing and upset his stomach and "real adequate kosher meal[s]" are served hot.  Notice, Plaintiff's Exhibit B, Declaration Under Penalty of Perjury of Plaintiff (Doc. 73-1 at 7).  He wants "a kosher meal only."[10]  Id. at 6.

In this regard, "[a]n injunction defining in detail the requirement for a kosher meal would be broader than necessary and would impose greater restrictions on the Department.  See 18 U.S.C. §3626(a)(1)(A)."  Watkins v. Sec'y, Fla. Dep't of Corr., 669 F. App'x 982, 983 (11th Cir. 2016) (per curiam).  Upon review, Plaintiff has been provided a Kosher Diet as defined in the Judgment ("The Defendants currently rely upon the certified kosher listings on the website maintained by the Chicago Rabbinical Council . . . .").  Case No. 1:12-cv-22958-PAS, Judgment (Doc. 548 at 3).  All of the food in the Kosher Diet is to be handled and prepared in accordance with set procedures.  Id.  Also, it is

---

[10] Apparently, Plaintiff seeks a requirement that kosher meals be served hot, and include a wide variety of foods.

significant that prior to entering the permanent injunction, the S.D. Fla. was fully apprised that the newly-offered CFO, the kosher food option, consists of all cold meals. Case No. 1:12-cv-22958-PAS, Order on Motions for Summary Judgment (Doc. 498, S.D. Fla.); Judgment (Doc. 548, S.D. Fla.). Also, the Court found that modification and termination of the injunction is governed by the PLRA, 18 U.S.C. § 3626, and Federal Rule of Civil Procedure 60. (Doc. 548 at 7, S.D. Fla.).[11]

At this point, Plaintiff raises a more recent complaint; the Kosher Diet provided to him in 2017 was cold, repetitive, unappetizing, and deficient in vitamins, minerals and even proteins.[12] See Response and Notice. As noted previously, he has not exhausted the claim that the kosher meals in the Kosher Diet provided at MCI are not well-balanced and are without sufficient nutritional value to preserve his health or are in some way deficient or sub-standard. Thus, this claim is due to be dismissed for failure to exhaust administrative remedies.

Therefore, it is now

**ORDERED:**

---

[11] Although not an issue that needs to be addressed due to the disposition of this case, any apparent attempt to seek modification of the injunction is a matter for the United States District Court for the Southern District of Florida.

[12] Of note, the CFO kosher food option, described in Case No. 1:12-cv-22958-PAS (S.D. Fla.) (Doc. 498 at 5 n.6), includes sardines, peanut butter and beans, significant sources of protein.

19

1. Defendant's Motion for Summary Judgment [for failure to exhaust administrative remedies] (Doc. 63) is **GRANTED** with respect to the request to dismiss the action pursuant to 42 U.S.C. § 1997e(a) with regard to the claim that the kosher meals in the Kosher Diet are not well-balanced and are without sufficient nutritional value to preserve Plaintiff's health or are in some way deficient or sub-standard.

2. Defendant's Motion for Summary Judgment (Doc. 63) is **GRANTED** as Plaintiff's claim to be placed on the kosher food plan is **moot**.

3. The **Clerk** shall enter judgment accordingly and close this case.

4. The Court appreciates the service of appointed counsel.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of September, 2017.

_____
BRIAN J. DAVIS
United States District Judge

sa 8/30
c:
Counsel of Record